See also D.C., 35 F.R.D. 512.

Bernhard ROSEE, Plaintiff,

v.

BOARD OF TRADE OF the CITY OF CHICAGO, an Illinois corpration, et al., Defendants.

No. 63 C 1348.

United States District Court
N. D. Illinois, E. D.
Feb. 16, 1965.

William J. Harte and James Chapman, Chicago, Ill., for plaintiff.

Don H. Reuben and Jack S. Levin, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant Board of Trade.

Joseph Borenstein, Chicago, Ill., for defendants James E. Baggott, Jr. and Harris Haywood.

John R. Blomquist, Campbell, Miller, Carroll & Paxton, Chicago, Ill., for defendant Donald W. Morrison.

Edward V. Hanrahan, U. S. Atty., and Frederick E. McLendon, Jr., Asst. U. S. Atty., Chicago, Ill., for defendants Albert W. Kirby and Sam Gordon.

James J. Coughlin, Chicago, Ill., pro se.

WILL, District Judge.

This is an action by plaintiff, Bernhard Rosee, alleging that defendants, the Board of Trade of the City of Chicago and various individuals, conspired wrongfully to deprive him of his membership in the Board of Trade; to destroy his business, occupation and livelihood; and to subject him to contempt and disrepute in commercial circles. Numbered among the defendants are two employees of the Commodity Exchange Authority, Albert W. Kibby (now retired) and Sam Gordon. Plaintiff alleges that Kibby and Gordon were active participants in the alleged conspiracy and used their positions as employees of the Commodity Exchange Authority to advance the purposes of the conspiracy.

I

Upon the motion of Kibby and Gordon, represented by the United States Attorney for this District, plaintiff's action was removed to this court from the Circuit Court of Cook County. The petition for removal points to plaintiff's contention that the alleged misconduct of defendants Kibby and Gordon took place in the course of their official duties and "under color of their office as officers of the Commodity Exchange Authority, an agency of the United States Government". Based on these allegations the suit was removed to this court.

Subsequent to the transfer, however, counsel for Kibby and Gordon have continually suggested that the government employees have been named defendants solely for the purpose of securing, by discovery, documentary evidence from the United States and that in fact federal jurisdiction does not extend to the instant complaint. While no motion to dismiss for want of jurisdiction has been filed, the court and all the parties to this action have understood that the jurisdictional issue is one of major consequence. Resolution of the question, however, has been postpond, in order to enable plaintiff, his counsel and counsel for the defendants to familiarize themselves with the complicated nature of the underlying facts and evidence, it being asserted that much of the discovery on the merits would also be relevant to the issue of jurisdiction. While such postponement represents a departure from the normal course of judicial procedure, the court has acted in the belief that, considering the unusual prob-

lems in this case, the ends of justice and the purposes of the Federal Rules of Civil Procedure will be best served by allowing the plaintiff the widest possible latitude in pursuing discovery and other preliminary investigations necessary to reduce his case to a manageable and understandable posture before requiring him to argue the question of jurisdiction.

The very nature of most conspiracies make it impossible for a plaintiff to allege each and every instance of conspiratorial conduct in his complaint or to state the relationship of each of the alleged co-conspirators with any degree of particularity. The instant case is no exception. The difficulty confronting the plaintiff is even more significant here, inasmuch as the essentials of federal jurisdiction require some showing that the government agents, Kibby and Gordon, were in fact probable co-conspirators. The paragraphs of the instant complaint make few references to alleged acts of the agents. While the supplemental statement filed by plaintiff amplifies these allegations to a slight degree, it does no more than allege that the plaintiff complained to Kibby and Gordon about activities of persons also named as defendants here.

The theory under which plaintiff has included the agents as alleged co-conspirators is certainly understandable. He reasons that Kibby and Gordon had been told (or should have been aware) of various activities of the other defendants, alleged to be in violation of the Commodity Exchange Act, 7 U.S.C. § 1 et seq. He knows that no formal action was taken with respect to these alleged activities. He concludes, therefore, that one possible explanation for the lack of formal action is that Kibby and Gordon purposely sent false reports to their superiors, ignored data which substantiated the allegations or otherwise falsified records and reports prepared under their supervision. Were this explanation borne out by the facts,

there can be little doubt that their charged participation in the alleged conspiracy would rise from a mere possibility to a probability sufficient, at this state of the proceedings, to indicate the likelihood of federal jurisdiction.

The documents against which plaintiff's theory can be tested are, of course, in the possession of the Commodity Exchange Authority. Accordingly, plaintiff served a deposition subpoena and a subpoena duces tecum on Roger E. Harper, the official in charge of the Authority's Chicago office. The subpoena commanded the production of audit papers, worksheets, reports and intradepartmental memoranda relating to plaintiff's complaints or to investigations of the firm of Baggott and Morrison (through whom the plaintiff traded) or its principals (who plaintiff charges were at the core of the alleged conspiracy). The subpoena also requested production of various periodic and daily reports filed with the Authority by the firm or its principals, indicating the daily trades and positions of the plaintiff, persons for whom the plaintiff made trades and the principals of Baggott and Morrison.

Contending that the documents sought were privileged under regulations promulgated by the Secretary of Agriculture or pursuant to statutory provisions, Harper moved to quash the subpoena. We considered this contention, holding that no statutory privilege existed and that the Secretary lacked authority to make such a determination unilaterally. This facet of the case is fully discussed in the court's opinion, Rosee v. Board of Trade, D.C., 35 F.R.D. 512 (1964).

## II

Pursuant to the Court's order, the Commodity Exchange Authority has deposited the documents named in the subpoena with the court for *in camera* inspection and a judicial determination both as to their relevance and as to the claim of privilege. The documents

fall into three broad groupings: (1) several folders containing reports, intradepartmental correspondence and miscellaneous data regarding Baggott and Morrison, its principals, and complaints made by or involving the plaintiff; (2) Audit Reports and Worksheets relating to the firm of Baggott and Morrison; and (3) copies of daily reports filed with the Authority. In the case of the latter category, the documents deposited are merely a sample of reports for three consecutive days.

Before turning to the question of privilege as it applies to each of these three categories, several preliminary matters may be disposed of. First, subsequent to the deposit of the documents, the Authority has indicated that it has no objection to supplying the plaintiff with twenty-one (21) of the ninety-nine (99) documents which comprise category (1), supra. We have, therefore, excluded these documents from consideration. Of the seventy-eight (78) documents remaining in this category, the court finds that many of them are in no way relevant to either the jurisdictional question or the issues raised by plaintiff's complaint. Inasmuch as the plaintiff had no way of determining the exact nature of each and every document in the Authority's files, he had no alternative but to draft the subpoena in broad terms. Aware of this problem, plaintiff requested and received leave of court to file a memorandum, *in camera,* to aid the court in its inspection of the documents in question. These suggestions cover, in considerable detail, the information which plaintiff seeks to uncover from examination of the Authority's files. We have considered the documents in the light of these suggestions and in the light of the court's understanding of plaintiff's case as drawn from the complaint, the files of the court and numerous hearings. We will not require production of those documents which, in the opinion of the court are

wholly irrelevant to the issues in the instant case.

Forty-two (42) of the seventy-eight (78) documents remaining in category (1), supra, meet this description. They include records of activities in which Kibby and Gordon played no part, memoranda merely of a "housekeeping" nature and copies of messages which do no more than reflect the normal day-to-day ministerial functions of government employees regarding matters which are not being questioned in this proceeding. We consider it advisable, however, to point out that our decision as to these documents is based on relevancy alone and should not be taken as an indication that such documents are, as a general rule, either subject to a claim of privilege or outside the bounds of such a claim. As explained below, the court considers that the question of privilege must be determined by an examination of each document sought in the light of the facts of the particular case at hand.

Finally, the United States Attorney has also filed a brief setting forth the views of the Commodity Exchange Authority with respect to the subpoena and its claim of privilege. As a preliminary matter, the Authority contends that it would be improper to allow plaintiff to proceed with the discovery contemplated by his subpoena until the jurisdictional question has been determined. Such an argument assumes the answer to the question before the court. It is built on the Authority's conclusion that plaintiff has named Kibby and Gordon as co-conspirators solely for the purpose of obtaining government files.

The Authority points to Allied Poultry Processors Company v. Polin, 134 F.Supp. 278, 279 (D.Del.1955) and Klein v. Lionel Corporation, 18 F. R.D. 184 (D.Del.1955) as requiring that discovery be stayed pending disposition of motions which might dispose of the case. While a court may stay discovery in its discretion, there is no requirement

obligating it to do so. Moreover, as the opinion in Klein indicates, the question of postponing discovery does not arise where the discovery sought relates to information which may bear on the disposition of the pending motion. As already noted, that principle applies here.

## III

We come, therefore, to the merits of the privilege claimed by the Commodity Exchange Authority. The Authority advances two bases for their claim. First, with respect to the agents' reports, intradepartmental correspondence and similar documents, the Authority contends that production is objectionable and contrary to the public interest in the belief that effective governmental investigation cannot proceed without protection of such reports. It suggests that the shelter of privilege is required to encourage full and frank discussion in communications between government agents and agencies. With regard to the rest of the documents (categories [2] and [3]), the Authority submits that its responsibility to Congress and to traders in commodities requires that the information remain confidential. We shall consider each of these claims separately.

The court recognizes that in a number of situations, the policy of encouraging and protecting intragovernmental discussion has been treated as a matter of paramount importance. See, e. g., Appeal of United States Securities and Exchange Commission, 226 F.2d 501 (6 Cir. 1955); Securities and Exchange Commission v. Shasta Minerals and Chemical Co., 36 F.R.D. 23 (D. Utah 1964). However, it is also clear that the privilege sanctioned by this policy is not absolute. The provilege of non-disclosure does not attach automatically to each and every paper which passes through the hands of government employees. It is necessary "to consider the circumstances around the demand * * in order to determine whether or not its production is injurious to the consultative functions of government that the privilege of non-disclosure protects." Kaiser Aluminum & Chemical Corporation v. United States, 141 Ct.Cl. 38, 157 F.Supp. 939, 946 (1958).

The public interest, to be sure, requires our support of executive and administrative officials in the faithful execution of their public trust. The public interest, however, is no less demanding when the basic right of the citizen to petition his government for the redress of grievances is involved.

Where the grievance stems from an authorized decision or determination of policy, the citizen is directed to seek redress in the legislative forum. The judicial power cannot be used to determine the efficacy of legitimate governmental policy. See this court's opinion in United States v. One 1962 Ford Thunderbird, 232 F.Supp. 1019 (N.D. Ill.1964). So, too, the processes of discovery should not be used to force an official to disclose the reasoning or other considerations which lie behind a decision he was fully authorized to make. We have applied this standard in cases before us. See this court's opinion in Madden v. Milk Wagon Drivers Union, Local 753 etc., 229 F.Supp. 490, 492–493 (N.D.Ill.1964). This is the principle upon which the decisions in Appeal of United States Securities and Exchange Commission, supra, and Shasta Minerals, supra, are based. See also, Zacher v. United States, 227 F.2d 219 (8 Cir. 1955), cert. den. 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1956). Each of these cases rests on a determination that the cerebrations and mental processes of government officials, leading to admittedly proper exercises of power, can never be a factor in a judicial proceeding and, therefore, need not be disclosed.

The case at bar, however, differs from those discussed above. The grievance does not stem from a "determination of policy". It arises from al-

leged misconduct by government officials. The forum for redress is not the legislature, it is the courts. Plaintiff does not seek to examine the factors which entered into an official's exercise of discretion; he hopes to show that two subordinate government agents wilfully conveyed false information to their superiors. His inquiry is not directed simply to the subjective evaluation which these agents gave to the charges he made. He believes that he can show that his allegations were corroborated by other evidence obtained by the agents and that such evidence was either ignored or suppressed in such a manner as would raise a presumption of inexcusable misfeasance or knowing participation in a conspiracy to injure him.

The distinction between privilege in cases questioning policy determinations and those alleging official misconduct is recognized by the opinion of the Court of Claims in Kaiser, supra. In sustaining a claim of privilege for a memorandum prepared for the War Assets Liquidator by his Special Assistant, the court observed that "(i)f the Special Assistant played a part in the operative events * * * a different situation might exist". 157 F.Supp. at 944.

 We do not suggest that litigants may, simply by alleging official misconduct, traverse an otherwise appropriate claim of privilege for government documents. In the instant case, plaintiff has shown (1) that there is a reasonable basis for his request and (2) that the defendant government agents played some part in the operative events. We therefore hold that he is entitled to inspect all relevant documents and correspondence written by the agents, prepared under their supervision, directed to them by their superiors, subordinates or co-workers or subject to their examination. Also included in category (1) are four documents discussing matters of administrative policy without reliance on the facts of this case and eight documents dealing with the defense of the instant litigation. The claim of privilege will be sustained as to them. Our order will specify the documents in each category with particularity.

 We come next to the audits and materials supplemental thereto which comprise category (2). Inasmuch as they were either prepared or examined by defendants Kibby and/or Gordon, our discussion above indicates that they should be produced. The Authority, however, suggests two additional reasons for non-disclosure. The information contained in the audits relates, in part, to the trades and trading positions of various individuals, many of whom are not defendants in the instant case. First, the Authority restates its position that § 8 of the Commodity Exchange Act, 7 U.S.C. § 12, prohibits the publication of such data. This contention was considered fully and disposed of in our earlier opinion. Disclosure pursuant to discovery proceedings is not a "publication", as that term is used in the Act. Second, the Authority points to its obligation to traders and to the general public, suggesting that confidentiality is required in order to assure the accuracy of reported data and to protect the business privacy of "hedgers" and "legitimate capitalists", enabling them to engage in hedging and other speculative transactions necessary to the maintenance of stable commodity markets.

 These considerations, while important, have little relevance under the circumstances of this case. The Authority has sufficient investigative authority and sanctions at its disposal to assure the accuracy of required reports and records. The information sought by the plaintiff involves activity which took place from four to six years ago. None of the trades remains "open" as of this date and the data would in no way compromise the positions of persons currently trading. If the Authority has any reason to believe that disclosure of these documents will have specific ad-

 

verse effects, it may submit a draft of a protective order to prevent any possible misuse of the information to be supplied.

Finally, we turn to the third category of documents, the various daily and periodic reports filed by Baggott and Morrison, their principals and other specific individuals. Here, too, the Authority contends that confidentiality is required. Our discussion of the claim of privilege with regard to the documents in category (2) applies with equal force here. Moreover, insofar as the requested documents are ones filed by persons named defendants here, the element of confidentiality is no different than that present with regard to returns filed with the Internal Revenue Service. Were the reports not subject to direct production, we would order the defendants to request copies of those which they had filed, for delivery to plaintiff.

 There are, however, two additional problems. First, many of these documents contain a "confidential identification code" by which the trader is identified. The court recognizes the need to maintain secrecy in this regard. Therefore, to the extent that any of these codes are still in use, they may be replaced with the name of the trader. Second, plaintiff's request for daily reports covers the entire period from January, 1958 to November, 1960. We believe that the plaintiff, with the information he has already obtained from other sources and with that which he will obtain from the other documents which will now be produced, should be able to specify with greater particularity the specific dates and reports which may be relevant. The court will not require the Authority to gather the several thousand documents called for by the broad terms of the subpoena without a further showing of good cause by the plaintiff. Our order will provide for the production of the requested reports only after such a showing as to specific

dates during the period covered by the subpoena.

In summary, Roger E. Harper, the official in charge of the Chicago office of the Commodity Exchange Authority, will be directed to produce, pursuant to the subpoena, the audits and supplemental materials; the daily and periodic reports filed with the Authority by the individuals specified in the subpoena, subject to the requirement that plaintiff specify particular dates shown to be relevant; and the correspondence, reports and intradepartmental memoranda requested, excepting those documents which, as previously indicated, have been found to be irrelevant or privileged. An order consistent with this opinion, specifying, except for the daily and periodic reports, the documents to be produced will be entered. If a protective order is deemed necessary by the Secretary of Agriculture or his representative, the court will consider its entry upon submission of a draft thereof.