**James WOOD, Plaintiff,**

v.

**Harold BREIER, Individually and in his capacity as Chief of Police of the City of Milwaukee Police Department, et al., Defendants.**

**Civ. A. No. 71-C-243.**

United States District Court,
E. D. Wisconsin.

Jan. 4, 1972.

On Motion to Stay Enforcement
Jan. 11, 1972.

8

Robert E. Sutton, Milwaukee, Wis., for plaintiff.

John J. Fleming, City Atty., by Thomas E. Hayes, Asst. City Atty., Milwaukee, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, Chief Judge.

This is a civil rights action for financial and equitable relief wherein it is claimed that policemen struck and arrested plaintiff James Wood without cause while the police were attempting to control a gathering in one of the parks of the City of Milwaukee. The defendants Breier, Mentkowski, Marshal, Block, and Miller, Jr., pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, have moved to dismiss this action for failure to state a claim and for lack of jurisdiction necessary to grant relief. Defend-

ant Breier has also moved for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure in order to prevent discovery of a police investigation made into the alleged assault on Wood. For the reasons set forth below, both of these motions are denied.

## I

I turn first to the motion to dismiss. The complaint in this action alleges (1) that on July 2, 1970, the plaintiff was attacked, beaten, and arrested by unknown uniformed patrolmen of the Milwaukee Police Department, all without provocation or cause; (2) that after arrest plaintiff was taken to the Milwaukee City Jail and held there by Patrolmen Allen Worachek and Lawrence Goulet without proper medical treatment; (3) that the Chief of Police, Harold Breier, and members of the Fire and Police Commission, Charles Mentkowski, Marjorie Marshal, Richard Block, and Louis L. Miller, Jr., conspired to deprive Wood of his constitutionally guaranteed rights by the formalization and perpetuation of policies that (a) shielded the police from identification, (b) prevented citizens injured by police from being able to examine records of the incident, and (c) prevented police officers guilty of misconduct from being disciplined; and (4) it is further alleged that (a) prior to July 2, 1970, the conspirators were aware of an explosive situation in the area in which Wood was attacked, (b) they dispatched police to that area on July 2 without badges or means of identification under their orders, direction, control, and supervision, and (c) subsequent to the attack on Wood, they attempted to cover up the incident.

I find that the complaint on its face states a cause of action under Title 42 U.S.C. § 1983,[1] the civil rights statute. Title 28 U.S.C. § 1343 [2] confers federal jurisdiction when a citizen properly alleges a § 1983 action. Defendants argue that the recent decision in the Western District of Wisconsin, Mifflin Street Community Co-Op v. Emery,[3] supports their position. I do not agree. The complaint on its face alleges the personal involvement of the defendants in a conspiracy to deprive the plaintiff of his constitutional rights, and I do not find the language used in the pleadings before me to be either ambiguous or inconsistent.[4] Accordingly, the defendants' motion to dismiss must be denied.

## II

I turn next to the motion to suppress discovery. The file sought to be suppressed is of an internal investigation made by the police department into the July 2 injury to Wood. The file has been submitted to me for *in camera* inspection by stipulation between the parties.[5] I have reviewed the file and

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

 * * * * *

"(3) To redress the deprivation, under color of any State law, statute, ordinance,

regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States * *."

3. Mifflin Street Community Co-Op v. Emery, Case No. 71–C–175, unpublished opinion (W.D.Wis., Nov. 8, 1971, supplemented Nov. 9, 1971).

4. Mifflin Street Community Co-Op v. Emery, supra, was dismissed in part because the allegation of personal involvement was ambiguous and inconsistent.

5. As neither party has objected to *in camera* inspection, I assume the propriety of such an *ex parte* review. Note, however, In re September 1971 Grand Jury

find that of the roughly one hundred documents in it, almost all are either firsthand reports by police officers or summaries of interviews with policemen made by police investigators. The remainder of the file consists of letters pertinent to the investigation, newspaper articles, flyers, and two factual summaries of the interviews. All the material in the file is of a factual as opposed to a policy discussion nature, and nowhere in the file are there any recommendations made for future action or criticisms of past actions. Finally, in that this is an investigation into the incident which is the basis for this lawsuit, almost by definition the file is highly relevant to this lawsuit. The fact that this investigation was made almost immediately after the incident makes it of even greater relevance. While I have no idea of what probability of success plaintiff's suit has, it may well be that if the suit has any chance of success, the keys to it are contained in this file.

 Rule 26(c) of the Federal Rules of Civil Procedure [6] grants the court the power to suppress discovery. However, in a case such as this the arguments for suppression must be of such great weight as to overcome not just one but two major congressional and judicial policy decisions. The first of these is the broad federal mandate for discovery in all civil actions.[7] This mandate reflects the decision that "a trial [should be] less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." [8] The importance of this policy is reflected in the decision that discovery should only rarely be suppressed.

Only strong public policies weigh against disclosure.[9]

"The principle favoring full access by the courts and litigants to relevant information, in the absence of strong competing considerations, is an important foundation for the achievement of justice by the courts in individual lawsuits. This principle is national policy of high rank, wholeheartedly endorsed and furthered by Congress. In the absence of a specific prohibition against disclosure in judicial proceedings, such as Congress set forth in some statutes, clear and strong indication is required before it may be implied that the policy of prohibition is of such force as to dominate the broad objective of doing justice. * * * " [10]

 The second public policy that is challenged by this motion for suppression is that reflected in § 1983 itself. "Its purpose is plain from the title of the legislation, 'An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes.' 17 Stat. 13." [11] But it is the manner of enforcement which gives § 1983 its unique importance, for enforcement is placed in the hands of the people. Each citizen "acts as a private attorney general who 'takes on the mantel

Richard J. Mara v. United States, —— F.2d —— (7th Cir., 1971); Natta v. Zletz, 405 F.2d 99, 101 (7th Cir. 1968).

6. "Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending * * * may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; * * *."

7. See Rule 26 et seq., Federal Rules of Civil Procedure. It is clear that this mandate includes both local and federal government. See, e. g., United States v. Procter & Gamble Co., 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), and Drum v. Town of Tonawanda, 13 F.R.D. 317 (W.D.N.Y.1952).

8. United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958).

9. Id.

10. Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326, 1348 (1968).

11. Monroe v. Pape, 365 U.S. 167, 171, 81 S.Ct. 473, 476, 5 L.Ed.2d 492 (1961).

of the sovereign,' " [12] guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.[13]

■■ Defendant Breier's motion for suppression is premised on what is commonly termed executive privilege, a privilege claimed by a governmental body when it fears that discovery of its confidential information will seriously impair its ability to function. It is a privilege which should not be lightly invoked by the Government,[14] for by invoking the privilege the case before the court may become a mockery with "half-informed litigants who sometimes get justice, if at all, by accident * * *." [15] Nor is the Government's assertion of the privilege conclusive upon the decision of the Government, for while such an assertion "is entitled to great respect * * * it is the duty of the Court to make an independent determination of whether a privilege does exist." [16] This judicial determination, however, cannot be made in abstract; rather it must be done on a case by case *ad hoc* basis by balancing the applicable public policies and the material sought to be discovered in each individual case.[17]

■ Given the case-by-case balance required, *stare decisis* carries less authority than it normally would. Nevertheless, it is important to note that prior precedent is clearly in favor of discovery in the case at hand. First, the great majority of cases which have addressed themselves to the propriety of discovery of law enforcement investigation have found that while in general discovery should be barred from on-going investigations, once the investigation and prosecution have been completed discovery should be permitted.[18] Even this

12. Bowe v. Colgate-Palmolive Co., 416 F. 2d 711, 715 (7th Cir. 1969), a case involving Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

13. Black v. Sheraton Corp. of America, 47 F.R.D. 263, 267 (D.D.C.1969).

14. In the instant case the only item in the record that could be construed as a formal claim of executive privilege is an affidavit submitted by Thomas E. Hayes, an assistant city attorney who is representing Harold Breier. Mr. Hayes states:

"He [Hayes] is informed the reports for which a protective order is sought were obtained in confidence for the limited purpose of determining whether departmental discipline should be meted out and that use of such reports for any other purpose, including discovery would impair the defendant Breier's ability to provide for the efficiency and good conduct of the department under his control and, therefore, he verily believes said reports are properly the subject of a protective order."

For purposes of this opinion I shall *assume* that a claim of executive privilege has been properly invoked, but see United States v. Reynolds, 345 U.S. 1,

7, 73 S.Ct. 528, 97 L.Ed. 727 (1952); Mackey v. United States, 122 U.S.App. D.C. 97, 351 F.2d 794, 795 (1965); United Air Lines, Inc. v. United States, 186 F.Supp. 824, 825 (D.Del.1960).

15. Timken Roller Bearing Co. v. United States, 38 F.R.D. 57, 63 (N.D.Ohio 1964).

16. Olsen v. Camp, 328 F.Supp. 728, 730 (E.D.Mich.1970).

17. Roviaro v. United States, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Olson Rug Co. v. N.L.R.B., 291 F.2d 655, 661 (7th Cir. 1961); Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326, 1340 (1968); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 327 (D.D.C.1966), aff'd 128 U.S.App.D.C. 10, 384 F.2d 979 (1967); Rosee v. Board of Trade, 36 F.R.D. 684, 688 (N.D. Ill.1965); Olsen v. Camp, 328 F.Supp. 728, 730 (E.D.Mich.1970); Timken Roller Bearing Co. v. United States, 38 F.R.D. 57 (N.D.Ohio 1964).

18. Brown v. Thompson, 430 F.2d 1214, 1215 (5th Cir. 1970); Swanner v. United States, 406 F.2d 716, 718 (5th Cir.

balance, however, is not absolute and there may be occasions where discovery of a particular on-going investigation would be proper.[19] In the instant case the investigation has long since been completed, and there is no indication that any prosecution is contemplated. Second, while a privilege is generally recognized for "intra- and inter-agency advisory opinions and recommendations submitted for consideration in the performance of decision- and policy-making functions"[20] if "there is a need for discovery to preclude prejudice and unfairness * * a conditional executive privilege cannot stand in the way of necessary discovery."[21] In any case, however, this conditional privilege with regard to advisory opinions does not extend to factual reports and summaries,[22] and as indicated, supra, this is exactly what the file in this case consists of. Third, the informer's privilege—"the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law"—[23] is also inapplicable. The informer's privilege is meant to encourage *voluntary civilian* cooperation with law enforcement agencies. The reports in the disputed file were made by police officers who simply reported what they did and did not observe while on duty the night of July 2. The reports were made as part of their paid employment in accordance with their sworn oath and, according to defendant's brief, under threat of disciplinary action if they refused. Police officers fulfilling their paid duty under threat of sanction cannot be considered "informers" for purposes of the informer's privilege, at least within the context of the present case. Fourth, even if executive privilege would normally be applicable, when the basis of a particular suit arises from the alleged misconduct or perversion of power by a government official, as is claimed in the case before me, discovery may well be proper.[24]

The specific policy arguments made in the case at hand lack sufficient persuasion. It is argued that the allowance of discovery would (1) impair the ability of the Chief of Police to obtain full and candid reporting from police of their activities because of a chilling effect; (2) be unfair to the officers who reported because they were unaware that their reports might be used in a civil action,

1969) ; Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir. 1962) ; Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326, 1340 (1968) ; Cooney v. Sun Shipbuilding & Drydock Co., 288 F.Supp. 708, 710–712 (E.D.Pa.1968) ; Van Saint v. American Express Co., 8 F.R.Serv. 34.41, Case 4 (E.D.Pa.1944) ; Capitol Vending Co. v. Baker, 35 F.R.D. 510, 511 (D.D.C.1964) ; Thomas v. Young, Case No. 64–C–203, unpublished opinion (E.D.Wis.1964). Cf. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957) ; Mackey v. United States, 122 U.S.App.D.C. 97, 351 F.2d 794, 795 (1965). Contra, Kott v. Perini, 283 F.Supp. 1 (N.D.Ohio 1968) ; Clark v. Pearson, 238 F.Supp. 495 (D.C.1965) ; United States v. Mackey, 36 F.R.D. 431 (D.D.C.1965), rev'd 122 U.S.App.D.C. 97, 351 F.2d 794 (1965).

19. Swanner v. United States, 406 F.2d 716, 718 (5th Cir. 1969).

20. Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F.2d 1326, 1339 (1968). See also Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd 128 U.S.App.D.C. 10, 384 F.2d 979 (1967) ; Olsen v. Camp, 328 F.Supp. 728, 731 (E.D.Mich.1970) ; Rosee v. Board of Trade of City of Chicago, 36 F.R.D. 684, 689 (N.D.Ill.1965).

21. Olson Rug Co. v. N.L.R.B., 291 F.2d 655, 662 (7th Cir. 1961).

22. E. g., McFadden v. Avco Corp., 278 F.Supp. 57 (M.D.Ala.1967).

23. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). See also 8 Wigmore, Evidence § 2374 (McNaughton rev. 1961).

24. Rosee v. Board of Trade of City of Chicago, 36 F.R.D. 684, 690 (N.D.Ill. 1965) ; Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 329 (D.C.1966), aff'd 128 U.S.App.D.C. 10, 384 F.2d 979 (1967) ; Olsen v. Camp, 328 F.Supp. 728, 731 (E.D.Mich.1970).

and (3) would place the Chief of Police in the dilemma of either conducting discovery which might be used by those who seek to sue or of not fulfilling his responsibilities under law to insure the efficiency and good conduct of the department. It would not seem unreasonable to conclude, viewing these arguments through legal eyes, that the first two arguments are at best of remote impact. The officers who reported did so under threat of administrative sanctions knowing that their reports might be used against themselves or their fellow officers in either criminal or departmental disciplinary actions. It is doubtful that the addition of possible civil sanctions to criminal and departmental ones would end candor or result in refusal to make reports. As for the third argument, the answer is first, that the argument misstates the case. There is no request for the Chief of Police to conduct discovery; all that is requested is discovery of an investigation already made. Second, in any case as a matter of law when a public officer is charged by law to perform a duty, there can be no dilemma about whether to perform it.

In the real world, however, defendant's arguments may be of some substance. That defendant's arguments may have merit, however, is not enough; rather, they must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain hidden. What merit defendant's arguments have, they clearly lose in the balance. The danger of doing harm to the Milwaukee Police Department by allowing discovery of this file is not nearly so great as the harm that would surely result to the efficacy of our entire legal structure, including the Milwaukee Police Department, if a case such as this were won because the truth was hidden.

It is therefore ordered that the motion of defendants Breier, Mentkowski, Marshal, Block, and Miller, Jr., to dismiss this action be and it hereby is denied.

It is further ordered that the motion of defendant Breier for a protective order suppressing discovery be and it hereby is denied.

## ON MOTION TO STAY ENFORCEMENT

▆ This is a motion to stay enforcement, pending appeal, of the January 4, 1972, order denying the motion of defendant Breier for a protective order suppressing discovery. Since a deposition of defendant Breier was scheduled for January 11, 1972, this motion to stay was heard on the date of filing, January 10, 1972. All parties appeared at the January 10, 1972, hearing.

At the January 10 hearing, defendant indicated that he considered my order of January 4, 1972, a "final decision" within the meaning of Title 28 U.S.C. § 1291. I indicated to counsel the following: (a) that my order of January 4, 1972, merely denied the particular order requested by defendant; (b) that I would consider alternative protection such as limited distribution of the file at issue; (c) that the January 4, 1972, order did *not* order defendant to testify or produce documents; and (d) that under the law of discovery I did not feel that an order like the January 4 order should normally be certified for appeal under Title 28 U.S.C. § 1292(b), but that in view of the public policy issue involved I *would* in this case issue a § 1292(b) certification, if requested. Plaintiff indicated that he would not oppose a protective order limiting distribution. He further indicated that he would agree to postpone defendant Breier's deposition so as to allow defendant to seek any form of relief he desired from the January 4, 1972, order upon the condition that defendant allow discovery of the disputed file if defendant's pursuit of relief proved futile.

After consultation, defendant decided *not* to request either an alternative protective order or certification for appeal under § 1292(b) or to agree to plaintiff's condition for postponement. Rather, defendant decided to stand on the original

motion for a stay pending a § 1291 appeal.

I conclude that defendant Breier's motion must be denied for two reasons: First, a stay of my January 4, 1972, order would be meaningless. Prior to January 4 defendant did *not* possess a protective order; thus, to stay my order denying the implementation of such an order would not affect defendant's position. Second, even if an order denying a protective order can be equated with an order for discovery, "A discovery order is immediately appealable only under 28 U.S.C. 1292(b) * * *." Hanley v. James McHugh Construction Co., 419 F. 2d 955, 956–957 (7th Cir. 1969).

It is therefore ordered that defendant Breier's motion to stay enforcement of the order of this court dated January 4, 1972, be and it hereby is denied.

But in order to maintain the status quo while defendant Breier attempts to appeal this order,

It is further ordered that plaintiff refrain from deposing Harold A. Breier any sooner than January 14, 1972.