## Tataren v. Little

652

*David Kairys,* for plaintiff.
*Sheldon Albert,* for defendants.

CHALFIN, *J.,* February 2, 1977 — This motion for inspection pursuant to Pa. R.C.P. 4009 raises the novel and important question of whether the plaintiff in a case of alleged police brutality can compel the production of (a) police records pertaining to the incident and (b) police personnel files containing prior similar complaints, and disciplinary or internal police reviews regarding the defendant police officers.

Plaintiff is suing the named police officers and the City of Philadelphia for damages resulting from alleged assault and battery, gross negligence, negligence, conversion, denial of due process, cruel and unusual punishment and deprivation of federally protected civil rights, allegedly suffered by plaintiff on November 14, 1974, at the hands of defendant police officers. He filed this motion to compel the city to produce: all reports, statements, summaries, memoranda, and other materials of any type or form pertaining to the facts, incidents, and occurrences described in the Complaint, and the Philadelphia Police Department's and the City of Philadelphia's investigations thereof, including materials concerning the result(s) of said investigations . . . [and] all records, interviews,

memoranda, or other documents contained in or made part of the personnel records or files of defendant police officers Laurence Little, Badge Number 6018, and Dieter Noak, Badge Number 2937, that were or are currently maintained by defendant City of Philadelphia and/or its Police Department, including but not limited to, complaints concerning their conduct as police officers, disciplinary or internal police review of their activities as police officers, and psy chiatric evaluations."

This is apparently a question of first impression in Pennsylvania. We cannot help but notice the growing number of such civil rights cases, both here and in federal courts. Since discovery plays a significant role in today's litigation, we must therefore review the permissible scope of discovery of such police records.

Motions for inspection are governed by Pa. R.C.P. 4009 which states in pertinent part:

"Subject to the limitations provided by Rule 4007(a) and Rule 4011, the court, on the motion of a party may

"(1) order a party to produce and permit the inspection, including the copying and photographing, by or on behalf of the petitioner, of designated tangible things, including documents, papers, books, accounts, letters, photographs and objects, which are in his possession, custody or control . . ."

Rule 4007(a) establishes that the permissble scope is any non-privileged matter "which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case." Rule 4011 sets forth certain limitations. The limitations asserted here are subsections (c) and (d) which prohibit discovery that,

"(c) relates to matter which is privileged . . . [or]

"(d) would disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial or would obtain any such thing from a party or his insurer, or the attorney or agent of either of them, other than information as to the identity or whereabouts of witnesses. . ."

Plaintiff contends that police records concerning this occurrence will provide the police account of the incident and the basis for their action and therefore, are needed in his preparation for trial. The personnel records of defendant officers Little and Noak, he asserts, are relevant in his case against the city for negligently supervising its employes.

Defendants object to disclosing both categories of information. They contend the investigation records are both privileged and prepared in anticipation of litigation. The personnel records, they urge, are irrelevant and privileged.

We hold that under Pennsylvania's Rules of Civil Procedure, routine records of the results of a police investigation are properly discoverable in a civil rights action arising from the incident. As to the personnel files, we conclude plaintiff is entitled to some but not all of such information. Therefore, we order that both sets of records be produced for in-camera inspection so that the court may determine which portions are properly discoverable and which are not, under guidelines enumerated hereinafter.

Although we can find no Pennsylvania case law on the precise issues here, ample Pennsylvania authority does exist on the scope of discovery in general. Under the modern view, discovery rules

should be liberally construed in favor of allowing disclosure, to prevent unfair surprise at trial.

"Great advances have been made in modern times to prevent a trial from being just a game of hide-and-seek. Rules have been promulgated to make each side reveal relevant evidence to the other. All of these rules are designed to make a trial a procedure for ascertaining the true facts. It is only after these facts have been ascertained that true justice can be dispensed.": Elkman v. Elkman, 1976 Pa. Superior Ct. 133, 136, 173 A.2d 682, 683 (1961). See also Goodwich-Amram §4007(a)-16 (Supp. April 1976) and §4005-5 (1973).

The federal courts also adhere to this view of discovery.[1] Indeed, the federal discovery rule is almost identical in substance to that of Pennsylvania. Federal Rule of Civil Procedure 26 allows discovery that is relevant and not privileged. As set forth earlier, Pennsylvania Rule 4007(a) has the same two requirements and in addition provides that discovery must "substantially aid" the party seeking the information. See Goodrich-Amram §4007(a)-19 (1973). Here, there is no dispute that Pennsylvania's additional requirement is met. Therefore, federal decisions regarding discovery offer persuasive authority. Cf. Goodrich-Amram §4005-3 and §4007(a)-16 (1973).

Before considering the requested information, we turn to the burden of persuasion. In view of its

---

1. The Supreme Court of the United States, in U.S. v. Proctor & Gamble Co., 356 U.S. 677 (1958), stated: "Modern instruments of discovery serve a useful purpose . . . They together with pretrial procedures make a trial less a game of blindman's buff and more a fair contest with basic issues and facts disclosed to the fullest practicable extent."

usefulness and the construction favoring liberal discovery, we hold that the party objecting to the disclosure has the burden of demonstrating exemption from discovery. Accord: Holowis v. Philadelphia Electric Co., 38 D. & C. 2d 260 (1966); Kolansky v. Hills, 34 D. & C. 2d 751 (1964); Pressley v. Boehlke, 33 F.R.D. 316 (W.D.N.C. 1963). Here, defendants bear this burden.

With these principles firmly in mind, we proceed to consider the requested information.

### A. RECORDS OF THE POLICE INVESTIGATION

Defendants object to disclosing the results of the police investigation of the incident on two grounds: such information they say was obtained "in anticipation of litigation" and is "privileged." This they assert baldly, without stating the reasons for their assertions. But we need not reject these contentions merely because defendants have not discharged their burden of persuasion.

Obviously, one of the principal functions of the police is conducting investigations into instances of lawlessness — whenever and wherever it occurs. The Police Department, of course, does this not in anticipation of litigation directed against itself but rather as the agency charged with the duty and provided with the ways and means of gathering such information. That a police officer is accused of the assault should not affect the department's obligation to investigate the incident, at least in the first instance, pursuant to normal procedures.

We view this situation as similar to one in which any organization conducts a routine investigation and prepares a report regarding an incident involv-

ing personal injury. The rule respecting discovery of such reports is well settled: routine records and reports a party would ordinarily conduct in the usual course of business are discoverable; more extensive investigations prepared expressly for litigation are not. See, e.g., Leto v. City of Philadelphia, 19 D. & C. 2d 53 (1959). In Leto, our court held that a routine accident investigation report involving a City vehicle prepared by the accident investigation division of the police department was not "prepared in anticipation of litigation" so as to be protected from discovery. The late President Judge Alessandroni reasoned:

"If the accident investigation division makes a more extensive investigation than the normal or usual report not as a function of the police department but as an investigative arm of the city, the latter report might very well fall into the category of an 'anticipation of litigation report'. The distinction appears to be based on whether it is a report in the regular course of business of the city or whether it is expressly prepared for litigation. The routine report cannot be considered to have been made in anticipation of litigation. Certainly the city cannot by its unilateral action withdraw documents which the Rules of Civil Procedure require all other litigants to produce upon proper motion."

This reasoning is applicable here. Thus, files containing the results of a routine police investigation into an instance of violence — even though a police officer is accused of committing the violence — are not exempted from discovery as made "in anticipation of litigation." Where, however, the investigation goes beyond the ordinary scope, at the instance of the City's Law Department or otherwise, only the routine portions need be dis-

closed — the results of the expanded investigation are "made in anticipation of litigation" and are therefore exempt from disclosure.

Here, the police department has not demonstrated that its investigation went beyond the routine scope. We therefore conclude that the city cannot use the cloak of this exemption.

We next consider defendants' bare assertion of privilege. The recent lessons of Watergate, as embodied in the landmark case of U.S. v. Nixon, 418 U.S. 683 (1974), teach that determining what is and is not privileged is the function of the court; the court cannot accept the mere assertion of the privilege without more. Therefore, adopting the procedure used in Nixon, this court will examine such materials in camera and release for discovery only the non-privileged portions.

In determining whether the reports or portions thereof are privileged, we shall be guided by the City Charter provision governing disclosure of governmental information:

"City records, the disclosure of which would invade a person's right to privacy, *hinder law enforcement,* endanger the public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is *legally privileged,* or which have been *prepared for or by the Law Department for use in actions or proceedings* to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection [at reasonable times and places.]" Philadelphia Home Rule Charter §5-1104 (1951). (Emphasis supplied.)

The city bears the burden of demonstrating that

pursuant to this provision such information need not be disclosed. The pertinent exemptions here are: if (a) such information was prepared for the law department's use in litigation, (b) revelation would "hinder law enforcement," or (c) the reports are "legally privileged." We have discussed the applicability of (a). In order to demonstrate that such disclosure would hinder law enforcement, the City must show the existence of and adverse effect upon an on-going police investigation, apart from the one pertaining to the instant litigation, that is likely to result in the institution of criminal charges.

Whether records of a police investigation are "legally privileged" is apparently another question of first impression in Pennsylvania; however, the federal courts have struggled with this. The majority view is that in civil rights actions, the results of police investigation are discoverable against a generalized claim of governmental privilege: Swanner v. U.S., 406 F.2d 716 (5th Cir. 1969); Boyd v. Gullett, 64 F.R.D. 169 (D.Md. 1974); Wood v. Breier, 54 F.R.D. 7 (E.D. Wisc. 1972); Alexander v. Rizzo, 50 F.R.D. 374 (E.D. Pa. 1970); but see Kott v. Perini, 283 F. Supp. 1 (N.D. Ohio 1968). We agree that absent an on-going independent police investigation, reports and other materials prepared as part of a routine police investigation into an incident of violence — even though a police officer is accused of committing the violence — should not be barred from discovery on the bare claim of governmental privilege. We can find no Pennsylvania court that has done so. The need for a full and fair airing of the facts, without unfair surprise, outweighs the city's generalized claim

that police files should never be exposed to the light of trial.[2] Therefore, the defendants must produce the files for in camera inspection.

## B. *PERSONNEL RECORDS*

This information presents a headlong collision between competing individual rights: plaintiff's right to know whether defendant officers have previously exhibited similar violent propensities (for his case against the city alleging inadequate employe supervision) versus the officers' right to confidentiality of their personnel records.

In this area as well, other courts have struggled with the problem. The reported cases we find hold, over the assertion of privilege, plaintiff in a police brutality case is entitled to discover information concerning previous complaints made to the police department regarding violent propensities of defendant police officers. In order to protect the officers' right to confidentiality of other portions of their personnel files, only the discoverable parts are revealed to plaintiff, leaving the remaining information undisclosed. See City of Tucson v. Superior Court, 18 Cr. L. 2503 (Ariz. Ct. App. 1/23/76); City of Los Angeles v. Superior Court for Los Angeles City, 33 Cal. App. 3d 778, 109 Cal. Rptr. 365 (1973); see also U.S. v. Akers, 18 Cr. L. 2287 (D.C. Super. 1975), and Boyd v. Gullett, supra, 64 F.R.D. at 178.

Prior complaints of police misconduct are clearly

---

2. In Wood v. Breier, supra, the court stated: "The danger of doing harm to the Milwaukee Police Department by allowing discovery of this file is not nearly so great as the harm that would surely result to the efficacy of our entire legal structure, including the Milwaukee Police Department, if a case such as this were won because the truth was hidden." 54 F.R.D. at 13.

relevant to the issue of whether the city negligently failed to supervise its employes. So held the court in City of Los Angeles, supra. In that case, the California court was faced with deciding whether and to what extent to permit discovery of information concerning prior misconduct of defendant police officer. The court ruled that plaintiff was entitled to information concerning prior suspensions of defendant police officer. However, the court declined to permit plaintiff to rummage through the officer's personnel file. Disclosure of the prior suspension, the court reasoned, sufficiently fulfilled plaintiff's need in his case against the city, when balanced against the officer's interest in preserving the confidentiality of his personnel file.

We also adhere to the view the court must balance these competing interests. Confidential police personnel files are certainly necessary to the maintenance of high police morale. Further, the prospect of routine public inspection would inhibit the officers' full and candid disclosure to city and police department officials conducting internal disciplinary investigations. Nevertheless, in order to prove his case against the city, plaintiff must know the relevant facts about prior claims of similar instances of such misconduct.

The best procedure for resolving the inherent conflict between these competing interests, we conclude, is an in-camera inspection of the personnel files. There, the court can determine and then release the information to which plaintiff is entitled, while leaving the remaining information undisclosed, thereby protecting the confidentiality of the officers' personnel files.

For these reasons we enter the following

662

## ORDER

And now, February 2, 1977, it is hereby ordered that defendants or their representatives produce forthwith for in-camera inspection:

1. All reports, statements, summaries, memoranda, and other materials of any type or form pertaining to the facts, incidents, and occurrences described in the complaint, and the Philadelphia Police Department's and the City of Philadelphia's investigations thereof, including materials concerning the result(s) of said investigations.

2. All records, interviews, memoranda, or other documents contained in or made part of the personnel records or files of defendant police officers Laurence Little, Badge Number 6018, and Dieter Noak, Badge Number 2937, that were or are currently maintained by defendant City of Philadelphia and/or its Police Department, including but not limited to, complaints concerning their conduct as police officers, disciplinary or internal police review of their activities as police officers, and psychiatric evaluations.