**Glenn DIAMOND et al., Plaintiffs,**

**v.**

**CITY OF MOBILE et al., Defendants.**

**Civ. A. No. 77–181–H.**

United States District Court,
S. D. Alabama, S. D.

Jan. 16, 1978.

H. Diana Hicks, and Michael A. Figures, and W. Clinton Brown, Jr., Mobile, Ala., for plaintiff Glenn Diamond.

James D. Wilson, Prichard, Ala., for plaintiff James A. Jones.

Robert C. Campbell, III, Mobile, Ala., for all defendants.

## OPINION AND ORDER

HAND, District Judge.

Glenn Diamond, Barbara Marshall and James A. Jones have filed suit against the City of Mobile, the Commissioners of the City of Mobile, the Chief of the Mobile Police Department, and certain officers and supervisors of the Mobile Police Department, alleging violations of their civil rights stemming from alleged acts of police brutality. Specifically, the plaintiffs allege that on March 28, 1976 defendants Patrick, Adams, Williams, Buck, Straum, Powell, and certain unknown others, compelled Diamond to undergo a mock hanging ceremony; hit, kicked, and verbally abused and threatened plaintiff Jones; and took plaintiff Marshall's infant child away from her, threatening bodily injury to the child. The plaintiffs further allege that such acts were committed pursuant to a policy, practice, custom or usage of racial discrimination.[1]

1. In support of the policy or practice allegation, the plaintiffs allege that a special unit within the Patrol Division of the Mobile Police Department known as the "600 Squad" was "organized, assembled and operated by the defendants with the purpose and intent and with the effect of terrorizing, assaulting, and falsely incriminating black citizens in Mobile, Alabama. (Complaint, para. 14, page 4)

Before the commencement of this action, in response to a complaint filed by the plaintiffs' attorney [2] with the Mobile Police Department, an internal police investigation was commenced in this matter which included, *inter alia*, the taking of written or recorded statements from the officers allegedly involved in the incident.[3] Such statements and the investigative file are now in the possession of Fred Collins, Esq., attorney for the City of Mobile who conducted most of the investigatory work.

On December 30, 1977 the plaintiffs gave notice that the deposition of Collins would be taken on January 12, 1978. Collins was ordered, by virtue of a subpoena duces tecum, to bring with him to the aforementioned deposition the following documents:

"1. The transcripts of recorded statements made to you or your assistants concerning the March 28, 1976, events involving Glenn Diamond, Barbara Marshall and/or James Jones, by the following people:

| | | | |
|---|---|---|---|
| 1. | Donald Riddle | 7. | Walter Milne |
| 2. | Winston Orr | 8. | Wilbur Williams |
| 3. | Danny Buck | 9. | C. S. Lund |
| 4. | Ronald Mair | 10. | Kenneth Powell |
| 5. | Michael Patrick | 11. | Roy Adams |
| 6. | Vernon Straum | 12. | James Richard Coley |
| | 13. Everett Allen Brown.[4] | | |

"2. The transcripts of recorded statements made to you or your assistants by persons other than those listed in item 1, concerning the March 28, 1976, events involving Glenn Dia-

mond, Barbara Marshall and/or James Jones.

"3. The written statements and/or oral statements reduced to writing, made to you or your assistants, concerning the March 28, 1976, events involving Glenn Diamond, Barbara Marshall and/or James Jones by the persons listed in item 1.

"4. The written statements and/or oral statements reduced to writing, made to you or your assistants by persons other than those listed in item 1, concerning the March 28, 1976, events involving Glenn Diamond, Barbara Marshall and/or James Jones.

"5. The transcripts or recorded statements, written statements and oral statements reduced to writing, that are now in your possession and were made by the persons listed in item 1 to anyone, concerning the March 28, 1976, events involving Glenn Diamond, Barbara Marshall and/or James Jones."

On January 11, 1978 Collins, through his attorney, filed a motion for a protective order pursuant to Rules 26(b) & (c), 30(b), and 45(b) of the Federal Rules of Civil Procedure. The major premises of the motion are that the information sought amounts to confidential communications between an attorney and his clients and that disclosure of such information will thwart the public policy favoring police discipline

---

2. It shall be noted that plaintiffs Diamond and Marshall are represented by counsel in this matter, but that plaintiff Jones has elected to proceed pro se.

3. No testimony has yet been offered with respect to whether such investigations are a custom with the Mobile Police Department, and the Court makes no finding with respect to this issue. However, it appears from conversations

with Attorney Fred Collins during oral argument that the "Diamond incident" was only a part of a larger internal police investigation into many varied matters. The Court does not consider the fact that this was not a specific independent internal investigation controlling.

4. All of the persons named in paragraph one of the subpoena are named defendants with the exception of Coley and Brown.

through internal investigatory procedures.[5] The plaintiffs have countered by asserting that the discovery sought is essential to the preparation of their case and that the information sought is well within the scope of allowable discovery under the federal rules:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

F.R.Civ.P. 26(b)(1). Therefore, it is incumbent on the Court to first determine whether information sought is within the scope of Rule 26 and, if it is, then to determine whether disclosure should be barred on grounds of privilege or public policy.

The Court is concerned only with that information sought in items 2, 3, 4 and 5 of the subpoena duces tecum. It is hoped that the information requested under item 1 may be made available through supplementation of interrogatory answers.[6]

■ The general rule with respect to pretrial discovery is that "prior to trial every party to a civil action is entitled to the disclosure of all relevant information in the possession of any person, unless the information is privileged." 8 Wright & Miller, *Federal Practice and Procedure*, § 2001, at 15 (1970). The defendants do not contest the relevancy of the material sought; indeed, it is clear from statements of counsel during oral argument that the availability

of the information sought will have a significant bearing on the plaintiffs' ability to go to trial in this matter. While such a consideration is not controlling, it is indicative of the need of the plaintiffs for such material. A caveat is necessary here, however, since defendants have averred that some of the material contained in the investigatory file pertains to matters wholly extraneous to the Diamond incident. This raises a clear relevancy question, a question of law subject to judicial determination. However, the overwhelming case authority on this subject allows a judicial *in camera* inspection of the materials to resolve any relevancy dispute. *Holmes v. Gardler*, 62 F.R.D. 70 (E.D.Pa.1974); *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973); *Wood v. Breier*, 54 F.R.D. 7 (E.D.Wis.1972).

Having determined that at least some part of the material requested meets the relevancy requirement of Rule 26, the question arises whether some privilege bars disclosure of such material. The only privilege asserted by Collins is that of confidential communications between an attorney and his client, contending that such relationship existed between himself as the city attorney and all persons that he questioned during the investigation. With respect to such allegations of privilege, the Court is concerned in this opinion only with Collins' role as inquisitor during the internal police investigation, and not with his role of advisor to the police prior to the commencement of such investigation.

■ The Court notes at the outset that Rule 501 of the Federal Rules of Evidence

---

**5.** Collins also contends that the information includes evaluative summary as well as factual matters, that such statements were taken in anticipation of police disciplinary proceedings, and that disclosure will have a chilling effect on any future internal evaluations. The evaluative portions of the information can easily be redacted through *in camera* examination and the Court is unconvinced that such disclosure would have any injurious effect on future investigations. Insofar as Collins alleges that the investigation was commenced in anticipation of disciplinary proceedings, the Court is of the opinion that such purpose has no bearing on the question whether such information is discoverable, since there are no allegations that

the information is contained in an on-going investigatory file. *See Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970); *Swanner v. United States*, 406 F.2d 716 (5th Cir. 1969).

**6.** Even without study of the investigative files the Court is convinced that a great deal of evidence pertaining to this case is involved. At the very least, the statements made by the parties requested under item 1 of the subpoena would serve to refresh the memories of such defendants, who have repeatedly answered "I don't know" to various interrogatories propounded by the defendants.

restricts the application of privilege and provides that any determination with respect to such privilege is to be determined under federal law in federal question cases such as this. This is the Fifth Circuit rule, *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), and has been supported by various commentators. 9 Wright & Miller, *Federal Practice and Procedure*, § 2408, at 333–34 (1970); 2B Barron and Holtzoff, *Federal Practice and Procedure*, § 967 (Wright Ed.). The privilege itself has been defined by the Fifth Circuit as applying "to communications between lawyer and client, and, to come within the scope of the privilege, an attorney must show that the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance." *United States v. Ponder*, 475 F.2d 37 (5th Cir. 1973). Further, the Court of Appeals has determined that such privilege is to be strictly construed. *United States v. Pipkins*, 528 F.2d 559 (5th Cir. 1976).

■ Under this state of the law, coupled with the extant facts as outlined by Collins during oral argument, the Court is convinced that the attorney-client privilege is not available to bar disclosure of the materials sought by the plaintiffs' subpoena duces tecum. Collins was the city attorney for the City of Mobile and was conducting an internal investigation of the Mobile Police Department. The purpose of his activities was not to provide legal advice or assistance to the persons questioned, but rather to provide his client the City of Mobile with information relating to alleged indiscretions within the Mobile Police Department. Thus, although Collins may have informed each person questioned that a confidential relationship existed, the Court is of the opinion that no federal privilege was created through such communications.[7]

■ The only other rationale forwarded by the defendants to bar disclosure is a public policy argument that such disclosure will impede future investigations by discouraging persons from testifying, thereby assumedly impairing the functioning of the Mobile Police Department. This argument has been previously advanced in various districts without success. *E. g.*, *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973); *Wood v. Breier*, 54 F.R.D. 7 (E.D. Wis.1972). The defendants cite two decisions in support of the public policy argument, *Kott v. Perini*, 283 F.Supp. 1 (N.D. Ohio, 1968) and *Ballard v. Terrak*, 56 F.R.D. 45 (E.D.Wis.1972). *Kott* was a habeas corpus action dealing with a subpoena duces tecum directing a police captain to appear at a deposition and "to bring with him all police records relating to the arrest, questioning, arraignment, trial, and sentencing of petitioner in 1964 for the crime of grand larceny." 283 F.Supp. at 1. The Court ruled that the police records were confidential and not subject to discovery in a civil action. *Kott*, however, is distinguishable on its facts from the instant case in that here the court is faced with records of an internal investigation conducted by the City's legal officers. The Court is convinced that there is a substantial difference between the investigatory notes of police officers and the investigatory results of an internal police investigation, and that, therefore, *Kott* is inapposite to the case at hand. The *Ballard·* facts are almost identical to the instant case in that a Chief of Police refused to turn over to the plaintiff a departmental investigatory report dealing with the conduct of police officers in arresting and detaining the plaintiff. However, the Court is of the opinion that *Ballard* is a minority view and is not to be given weight

---

7. The Court does not reach the question of privilege with regard to the presence of persons other than "clients" of Collins during the questioning. The rule is clear that no attorney-client privilege arises where there is at least one person present during the communications who is not a client. There is no basis for the privilege. *United States v. Gordon-Nikkar*, 518

F.2d 972 (5th Cir. 1975); *United States v. Blackburn*, 446 F.2d 1089 (1971), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). In the instant case the statements were recorded, but the record and oral arguments do not disclose whether third persons were in the room at that time.

as support for the defendants' policy arguments.[8]

The Court's function in cases in which policy arguments are raised is to balance the competing interests: on the one hand is the interest of the Mobile Police Department in protecting its internal investigatory procedures; on the other are the interests of the plaintiffs in obtaining information vital to their lawsuits which is unobtainable from any other source. As Judge Reynolds in the *Wood* case and Judge Becker in the *Rizzo* case determined have previously concluded, this Court is of the opinion that the defendants' arguments in opposition to disclosure are outweighed by two factors militating in the plaintiffs' favor: (1) the liberal treatment due to be accorded pre-trial discovery requests under the Federal Rules of Civil Procedure; and (2) the liberal treatment due to be accorded civil rights plaintiffs who are attempting to protect, preserve, or obtain fundamental rights of public interest. *Frankenhauser v. Rizzo, supra* at 343; *Wood v. Breier, supra* at 10. The Court is also persuaded by the language of Judge Robinson in *Freeman v. Seligson*, 405 F.2d 1326 (D.C.Cir. 1968), where he states that: "In the absence of a specific prohibition against disclosure in judicial proceedings, such as Congress set forth in some statutes, clear and strong indication is required before it may be implied that the policy of prohibition is of such force as to dominate the broad objective of doing justice." 405 F.2d at 1348. In the situation before the Court there is no avowed public policy in barring disclosure of the contents of police investigatory files that no longer have any relation to any on-going criminal litigation; indeed, such disclosure has been approved by the Fifth Circuit. *Brown v. Thompson*, 430 F.2d 1214 (5th Cir. 1970) (by

implication); *United States v. Anderson*, 406 F.2d 719 (5th Cir. 1969). The Court is persuaded by the case law that the materials sought by the plaintiffs is not unavailable on public policy grounds.

■ The Court is convinced that disclosure of the investigatory file is due to be made in this matter by virtue of the foregoing considerations. However, having heard the argument of counsel for all parties, the Court is of the opinion that the most effective form of disclosure with regard to the statements made by those persons listed in item 1 of the subpoena duces tecum is for Collins to return to each person so listed a copy of all statements made by him prior to the commencement of the internal police investigation in this matter so that such persons may supplement their answers to the interrogatories previously filed in this case. With respect to the other items requested by the subpoena duces tecum, the Court is of the opinion that such material is also discoverable, and that the complete investigatory file is to be submitted for an *in camera* inspection by the Court for redaction of irrelevant material prior to disclosure to the plaintiffs. Accordingly, it is,

ORDERED, ADJUDGED and DECREED that:

(1) Copies of all statements made by persons identified by item 1 of the subpoena duces tecum prior to the commencement of the internal police investigation are to be returned to the persons making such statements, and such persons are, after considering the statements, to supplement all answers to interrogatories made by them previously in this case. The copies of such statements are to be so returned on or before January 20, 1978, and the supplementation of such interrogatory answers is

---

8. *Compare Ballard v. Terrak*, 56 F.R.D. 45 (E.D. Wis.1972), *with Wood v. Breier*, 54 F.R.D. 7 (E.D.Wis.1972). Both of these cases dealt with records in the possession of Harold Breier, the Chief of Police in Milwaukee, Wisconsin. In *Ballard*, Judge Gordon refused to order disclosure of an investigative file, while in *Wood*, Judge Reynolds did such a disclosure. Such a

conflict in the decisions of the same District Court are not unusual, but in this situation the Court has chosen to follow the view of *Wood*, which has received support in other jurisdictions. *E. g. Boyd v. Gullett*, 64 F.R.D. 169 (D.Md.1974); *Gaison v. Scott*, 59 F.R.D. 347 (D.Hawaii 1973); *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa.1973).

to be completed on or before February 3, 1978.[9]

(2) All investigatory files compiled during the internal police investigation concerning the "Diamond incident" are to be submitted to the Court no later than January 20, 1978 for an *in camera* inspection and redaction prior to disclosure to the plaintiffs.

---

**9.** The Court instructs the parties that if review of such statements does not adequately refresh their memories with respect to the interrogatories, then the Court will effect an *in camera* reconciliation between the interrogatory answers and the parties' prior statements and will provide the results of such reconciliation to the plaintiffs.