**UNITED STATES of America**

**v.**

**Eqbal AHMAD et al.**

**Appeal of Elizabeth McALISTER.**

**William Davidon, Intervenor.**

**No. 73-2094.**

United States Court of Appeals, Third Circuit.

Argued April 3, 1974.

Decided June 26, 1974.

A  Yes.

A  Yes.

Tr. 69–70. See also Tr. 108–109; 138–39; 186–87; 197–98; 279–80.

Jack J. Levine, Philadelphia, Pa., William J. Bender, Newark, N. J., for appellant and intervenor.

Henry E. Petersen, Asst. Atty. Gen., Edward C. Christenbury, Garvin L. Oliver, Larry L. Gregg, Dept. of Justice, Washington, D. C., S. John Cottone, U. S. Atty., for appellee.

Before VAN DUSEN, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The difficulties that may be encountered when litigation is divided between courts of concurrent jurisdiction is illustrated by this Tale of Two Districts—an appeal generated by civil suit fallout from a closed criminal proceeding.

During the pretrial stages of a criminal case in the Middle District of Penn-

sylvania in which she was a defendant,[1] Elizabeth McAlister, now Mrs. Philip Berrigan, learned that she may have been overheard by electronic surveillance. Judge R. Dixon Herman, who presided over the case, found that there had been an unauthorized and illegal wiretap.[2] A taint hearing was held in May, 1972, after the criminal trial had been concluded. Transcripts of two conversations were made available to two of the then defendants, McAlister and Philip Berrigan, as well as counsel of record, in accordance with a protective order to which the parties agreed. The stipulation and order read:

"It is stipulated by and between counsel for the parties that the contents of or information contained in any tapes or transcripts thereof relating to any overhearing of conversations by means of electronic surveillance, shall not be disclosed to persons other than defense counsel of record or defendants Philip Berrigan and Elizabeth McAlister.

[signature of counsel]

IT IS SO ORDERED.

/s/ R. Dixon Herman
United States District Judge
May 1, 1972"

On October 10, 1972, a suit was filed in the Eastern District of Pennsylvania by McAlister and one William Davidon against Richard D. Kleindienst, then Attorney General of the United States, L. Patrick Gray, then Acting Director of the FBI, John N. Mitchell, former Attorney General, and several named and unnamed agents of the FBI. The complaint alleged in essence that Mrs. Berrigan and Davidon were the subjects of illegal wiretaps and that they claimed damages in accordance with, inter alia, the provisions of 18 U.S.C. § 2520,[3] which permits recovery of civil damages and counsel fees in such situations.

The civil case was assigned to Judge E. Mac Troutman for disposition. The defendants then asserted that they were unable to answer all of the allegations of the complaint because they were bound by the protective order and the stipulation filed in the criminal case in the Middle District. To resolve the impasse, Mrs. Berrigan and Davidon jointly filed a petition with Judge Herman in the Middle District seeking to vacate the protective order. After consideration of briefs filed by the parties, Judge Herman on October 24, 1973 refused to lift the protective order. Mrs. Berrigan filed a notice of appeal in the district court on November 15, 1973, after having been granted an extension of time by Judge Herman.[4]

---

1. See United States v. Ahmad, 347 F.Supp. 912 (M.D.Pa.1972), modified sub nom., United States v. Berrigan, 482 F.2d 171 (3d Cir. 1973); United States v. Ahmad, 335 F.Supp. 1198 (M.D.Pa.1971); and United States v. Ahmad, 329 F.Supp. 292 (M.D.Pa.1971).

2. See 335 F.Supp. 1198 (M.D.Pa.1971). The electronic surveillance apparently had been performed without a court order in accordance with a Presidential determination that national security was involved. Judge Herman relied on the decision of the Court of Appeals in United States v. United States District Court, 444 F.2d 651 (6th Cir. 1971), later affirmed by the United States Supreme Court at 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) in deciding that the wiretap was illegal.

3. "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications, and (2) be entitled to recover from any such person—

(a) actual damages but not less than liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher;

(b) punitive damages; and

(c) a reasonable attorney's fee and other litigation costs reasonably incurred.

"A good faith reliance on a court order or legislative authorization shall constitute a complete defense to any civil or criminal action brought under this chapter or under any other law."

4. It is questionable whether such an extension was required. Although the petition was filed under the criminal case caption, the order really applied to a civil, collateral matter. See Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir. 1964); Fed.R. App.P. 4.

Davidon did not file a notice of appeal but on January 18, 1974, requested leave to intervene as an appellant in this court. The motion was granted, and Davidon adopted the brief filed by Mrs. Berrigan.

■ Since Davidon did not appeal the order as it applied to him, we consider the merits of this case only as applied to Mrs. Berrigan. In the peculiar circumstances here, Davidon's intervention is necessarily limited. He cannot circumvent the requirements for taking an appeal in his own right by a later petition for intervention in an effort to present contentions applicable only to him.[5]

Mrs. Berrigan asserts that the practical effect of Judge Herman's order is that the plaintiffs in the civil suit will be unable to proceed because it is unlikely that Judge Troutman will order the defendants in his court to file an answer which would be in violation of the protective order previously filed in the Middle District.[6]

■ However, at oral argument on this appeal, counsel for the defendants conceded that they could answer the complaint of Mrs. Berrigan to admit that she was overheard as a result of a surveillance conducted without the authority of court order. Since Judge Herman found there were two such conversations intercepted in the period from November 24, 1970 to January 6, 1971[7] and that they were illegal, there is nothing to prevent such admissions by the defendants. These facts were reported in the written opinion of the dis-

trict court after the taint hearing had been concluded, and thus, there is no disclosure problem.

At this stage of the litigation, therefore, there has been no need shown to have the protective order lifted as to Mrs. Berrigan.[8] The concession of the defendants in this court that they can, and therefore must, file an answer, will enable her to present a prima facie case of an illegal overhearing on two separate occasions. Thus, Judge Herman's order will be affirmed on the basis that no need exists at this point to vacate the protective order.[9]

We recognize, however, that there may well be further requests to dissolve or modify the protective order and think it appropriate, therefore, to comment on the grounds relied on by the Middle District in its Memorandum of October 24, 1973.

The district court took judicial notice of an affidavit filed by then Attorney General Mitchell on May 13, 1971 which asserted that the surveillance was "one deemed necessary to protect against a clear and present danger to the structure or existence of the Government of the United States" and that ". . . it would prejudice the national interest to disclose the particular facts contained in the sealed exhibit."[10] The court took no position on the justification for the government's desire for secrecy but accepted the Attorney General's affidavit at face value.

■ The difficulty with this position is that what may have been justified in

5. Nor did Davidon utilize a petition for mandamus, the procedure followed in Ex parte Uppercu, 239 U.S. 435, 36 S.Ct. 140, 60 L. Ed. 368 (1915) and in Olympic Refining Co. v. Carter, *supra*.

6. On September 12, 1973, Judge Troutman signed an order granting the motion of the plaintiff to compel the defendants to answer within 30 days. By agreement of counsel at a later date, that order was stayed pending the determination of this appeal.

7. *See* 347 F.Supp. at 934.

8. *See* discussion *infra* on the balancing of a litigant's need for information against the

government's desire to protect it. As the Supreme Court noted in United States v. Reynolds, 345 U.S. 1, 11, 73 S.Ct. 528, 534, 97 L.Ed. 727 (1953), " . . . where necessity is dubious, a formal claim of privilege . . . will have to prevail."

9. If in the future any need should arise for a modification of the stipulation, another application can be presented to Judge Herman.

10. The sealed exhibit contained a description of the premises and transcripts of overheard conversations. (Appendix at 10A)

May of 1971 (on the record of this case we are unable to pass any judgment on that point) is not necessarily so today. The passage of time has a profound effect upon such matters, and that which is of utmost sensitivity one day may fade into nothing more than interesting history within weeks or months. Any considerations of national security interests therefore must be viewed in the light of circumstances as they exist at the time the request for disclosure is made—not when the affidavit was prepared or the material filed with the court.

██ When governmental privilege is invoked to prevent disclosure of information during the course of litigation and a need for the data is shown, disposition of the dispute requires a balancing of the interests. The needs of a party to secure information necessary to the prosecution or defense of a civil remedy expressly granted by Congress must be weighed against the government's position that it should not divulge that which would be injurious to the public security. Obviously, such a process requires a careful inquiry into the pertinent facts.

██ The government's privilege is a necessary one, but it is one which may be overcome by a citizen's right to secure desired information.[11] In determining whether the privilege is to prevail, a court is faced with a delicate task. As the Supreme Court pointed out in United States v. Reynolds, *supra*, at 8:

"The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing the disclosure of the very thing the privilege is designed to protect." (footnotes omitted)

In carrying out such an assignment, the in camera techniques employed in Jabara v. Kelly, 62 F.R.D. 424 (E.D.Mich., 1974), and Philadelphia Resistance v. Mitchell (Civil No. 71–1738, E.D.Pa., August 3, 1972), may be helpful.

██ It is difficult to set out adequate guidelines in advance for such an inquiry as proposed here because the facts loom so large. All that can be said is that the necessities of the civil litigation and the policy of the Federal Rules of Civil Procedure favoring broad disclosure require that there be serious and well-founded concern about national security before all disclosure is prohibited. In United States v. Reynolds, *supra*, at 11, the court said:

"In each case, the showing of necessity which is made will determine how far the court should probe in satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake. *A fortiori*, where necessity is dubious, a formal claim of privilege . . . will have to prevail."

It may well be that the defendants in the civil case will be those who next seek to have the order lifted because of the possibility that the Eastern District will exercise the broad default powers conferred by Fed.R.Civ.P. 8(d) and 37(b)(2). *See* the procedures followed in United States v. Reynolds, 10 F.R.D. 468 (E.D.Pa.1950), aff'd. 192 F.2d 987 (3d Cir. 1951).[12] Indeed, we feel it should have been the defendants who presented the petition to the Middle District in the first instance. The plain-

11. For discussion of the privilege, *see* Wright & Miller, 8 Federal Practice and Procedure: Civil § 2019.

12. The case was reversed on its merits, not on the procedures employed, by the Supreme Court in 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).
*See* note 6, *supra*.

tiffs' proper posture was to insist upon a default being entered in the Eastern District, thereby shifting the burden to the defendants to secure a relaxation of the Middle District protective order.

The order of the district court will be affirmed.